WOLFF & SAMSON PC
THE OFFICES AT CRYSTAL LAKE
ONE BOLAND DRIVE
WEST ORANGE, NEW JERSEY 07052
973-325-1500
Adam K. Derman
Attorneys for Plaintiff
dtw Marketing Research Group, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DTW MARKETING RESEARCH GROUP, INC., | Civil Action No. |
| Plaintiff, | |
| vs. | Civil Action |
| THE VOXX GROUP, LLC d/b/a PHARMAVOXX, HEALTH IQ, LLC, XiQ, LLC, JOHN DOES 1-99 and JANE DOES 1-99 | **COMPLAINT** |
| Defendants. | |

Plaintiff dtw Marketing Research Group, Inc. ("DTW"), with an address at 227 US Highway 206, Flanders, New Jersey 07836-9175, by and through its attorneys, Wolff & Samson PC, for its Complaint against defendants The Voxx Group, LLC d/b/a PharmaVoxx, Health IQ, LLC and XiQ, LLC (collectively "Defendants") each with an address at 770 The City Drive, Suite 7400, Orange, California, 92868, alleges as follows:

### NATURE OF THE ACTION

1.      DTW is the creator of the world's first database of pharmaceutical promotional materials, which allows clients to search, download and analyze a comprehensive collection of pharmaceutical promotional materials dating back to 1996.  DTW's database has become the industry standard for pharmaceutical companies as well as advertising companies promoting

1210685.3

pharmaceutical products.   Clients access DTW's secured database through a password protected system, which clients pay annual subscription fees to obtain.

2.      DTW has learned that Defendants, including its newest competitor, the Voxx Group, LLC d/b/a PharmaVoxx, have surreptitiously and illegally accessed and downloaded information from DTW's database in an effort to steal confidential information and unfairly compete with DTW.   The evidence of this wrongful conduct is compelling -- DTW has confirmed thousands of downloads from the IP Address of Defendants for the past nine months and even before.

3.      Accordingly, DTW brings this action against Defendants for misappropriation of confidential information, tortious interference, unfair competition, fraud, breach of contract, conversion, violations of state and federal computer fraud statutes and civil conspiracy.   DTW has already suffered significant damages as a result of Defendants' conduct, which harm will continue unless Defendants are enjoined.

## PARTIES

4.      Plaintiff dtw Marketing Research Group, Inc. is a New Jersey corporation with its principal place of business at 227 US Highway 206, Flanders, New Jersey 07836-9175. DTW is a pharmaceutical and diagnostic industry based market research firm, and the leading provider of a searchable database of promotional items distributed by the pharmaceutical industry.

5.      Defendant The Voxx Group, LLC d/b/a PharmaVoxx ("PharmaVoxx") is a California company with its principal place of business at 770 The City Drive, Suite 7400, Orange, California, 92868.  PharmaVoxx was launched in 2007 and competes with DTW by also selling a searchable database of promotional materials in the pharmaceutical industry. PharmaVoxx regularly markets to, solicits customers and conducts business in New Jersey.

2

1210685.3

6.      Defendant Health IQ, LLC is a California company, also with its principal place of business at 770 The City Drive, Suite 7400, Orange, California, 92868.  Health IQ promotes itself as a health care based consulting firm focusing on competitive intelligence.  Health IQ regularly conducts business in New Jersey, and previously purchased data directly from DTW, which DTW now believes was done under false pretenses.

7.      Defendant XiQ, LLC is a California company with its principal place of business at 770 The City Drive, Suite 7400, Orange, California, 92868, and is the parent company or holding company of defendants Health IQ and PharmaVoxx.  Upon information and belief, at all relevant times, XiQ conspired with the other defendants to commit the acts described herein and/or was their alter ego.

8.      Defendants John Does 1-99 and Jane Does 1-99 are individuals and entities who aided and abetted and/or conspired with the other defendants to conduct the unlawful activities described herein.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over the claims herein pursuant to 28 U.S.C. §§ 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

10.     Personal jurisdiction and venue are proper in this district pursuant to 28 U.S.C. § 1391 because each of the Defendants does business in New Jersey and/or their conduct was directed towards and intended to cause harm to DTW in this district.

**BACKGROUND**

**A.    DTW Creates The   World's First Database Of Pharmaceutical Promotional Materials**

11.    DTW was formed in 1983 and is a market research firm for the pharmaceutical and healthcare industries.

12.    In 1996, DTW launched the first searchable database of pharmaceutical promotional materials specific to the U.S. pharmaceutical industry, which was known as "CD Promo."

13.    The purpose of the database was to create a single searchable database of all promotional materials regarding pharmaceutical products in order to aid pharmaceutical and advertising companies in researching, analyzing and tracking how pharmaceuticals are marketed, and what advertising and promotional materials are or have been used to market for pharmaceutical products.  At the time, no other database of such materials existed.

14.    Beginning in 2002, DTW expanded the CD Promo pharmaceuticals database to include promotional materials from not only the U.S., but also France, Germany, Italy, Spain, Switzerland, the United Kingdom Canada (2004), Japan (2006) and the Animal Health market in 2007.

15.    In order to collect data for the CD Promo database, DTW enlists doctors, nurses and other healthcare professionals to provide DTW with pharmaceutical promotional materials. DTW currently has approximately 1500 healthcare professionals worldwide providing DTW with materials who are compensated by DTW for their participation.

16.    DTW currently has over 1,000,000 promotional objects and approximately 2.5 million images included in its database, including materials dating back to 1996.

1210685.3

17.     The information on CD Promo is updated on a daily basis by DTW employees, who compile and scan the promotional material into the database, and summarize and categorize the data to make it searchable and understandable by DTW's clients.

18.     The compilation of information, and the categories of information and summaries that correspond with each item in the CD Promo database are the confidential and proprietary information of DTW available nowhere else other than on CD Promo, which confidentiality is guarded by DTW.

**B.      Subscriptions for CD Promo Are Password Protected**

19.     CD Promo is available on an annual subscription basis, which can be tailored to fit each client's particular needs.  The annual subscription fee ranges from $500 for a limited subscription to over $200,000 for full access to DTW's database.

20.     Upon purchase of a subscription, clients are provided with a unique username and password.  Access for additional users can be purchased at an additional cost.

21.     When a user logs on to access CD Promo, they must first agree to the CD Promo Terms of Use and License Agreement by acknowledging a click-through log-in agreement. The Terms of Use provide, among other things, as follows:

- (i) dtw's CD Promo Database (the "Database") is confidential and proprietary information and/or original work of authorship compiled and owned by dtw, and (ii) Client shall keep in confidence and protect dtw's Database from disclosure to unauthorized parties and restrict its use as provided herein.

- Client agrees to use the Database and all information obtained therefrom solely for its internal professional and/or business purposes and not for any other purpose. Further, the Client shall not: (i) access/use the Database for the benefit of third parties, or (ii) provide any information from the Database to third parties, including without limitation to any third party market research companies, (iii) permit the use, duplication, reproduction, copying or disclosure of the Database and/or the information contained therein, or otherwise make the Database available for any purpose

5

to any unauthorized party, including without limitation to any third party market research companies. For example, and not by way of limitation, Client agrees that it shall not (i) resell information from the Database; (ii) use or allow third parties to use information from the Database for the purpose of compiling, enhancing, verifying, supplementing or deleting from any compilation of information which is sold published, furnished or in any manner provided to a third party, including without limitation to any third party market research companies even if such companies are undertaking market research or other projects for client; or (iii) use the information from the Database in any service or product provided by the Client or any third party, including without limitation to any third party market research companies.

• Client further acknowledges and agrees that it has been furnished with a Password for use by it to access the Database. The Password provides vital security in preventing unauthorized access to the Database and the confidential information contained therein. Client is responsible for keeping and maintaining the security of each Password that is assigned to it and shall have sole and exclusive responsibility for any unauthorized access to the Database that results from Client's failure to keep the assigned Password(s) secure. Client shall be primarily liable for the acts of omissions of its employees, subcontractors, other agents and/or any such person or entity to whom or to which it disclosed or revealed its Password.

A copy of the Terms of Use Agreement is annexed hereto as Exhibit A.

22.     The CD Promo database includes images of promotional material in viewable and downloadable PDF and JPEG format, which are introduced with a summary cover sheet. The summary cover sheet provides sourcing information for the promotional material that summarizes the key circulation dates, trade name, country of origin, object type, keywords, and a thumbnail image of the promotional material.   A link accompanying a thumbnail can be clicked on and downloaded, allowing the user to view it as a PDF or JPEG image.

23.     Originally, the CD Promo database was contained on a compact disc that was provided by DTW to clients.  Authorized users of CD Promo may now access the CD Promo database by going to DTW's website http://www.dtwresearch.com and signing on with the unique username and password assigned to that particular user.

6

24.     Prior to March of 2009, users had to download a proprietary software program called emageX in order to download and view the documents contained on CD Promo. Currently, neither the emageX software, nor any other proprietary software, is required to access CD Promo and the images are available for authorized users to view and download in JPEG and PDF format.

25.     If one of DTW's pharmaceutical company clients wants to share materials downloaded from CD Promo with a third party entity such as an advertising company hired by the pharmaceutical company, DTW requires that third party to enter into a Third Party Agreement with DTW.

26.     As an alternative to purchasing a subscription, clients of DTW can also request DTW to compile certain information and images for a page-based fee.  Specifically, rather than purchase a subscription and conduct their own searches, DTW will compile information as to a particular pharmaceutical product, company or medical condition.  Under such circumstances, DTW charges a fee of $16 to $18 for each page of United States materials that is downloaded and $26 to $32 for materials emanating outside the United States, depending upon the delivery time.

## C.     Health IQ obtains materials from DTW and CD Promo

27.     In 2004, DTW began receiving requests for pharmaceutical promotional information and documents from an individual named Tony Page on behalf of Health IQ.

28.     Upon information and belief, Tony Page is the co-owner of Health IQ, along with Daniel Vesely, who also owns XiQ, and PharmaVoxx.

29.     From 2004 through 2007 Health IQ contracted with DTW to have DTW conduct custom searches and provide downloads of promotional materials.  During this time period,

1210685.3

DTW provided Health IQ with materials dating back as far as 1999 for a cost of approximately $6000.

30.    Although the orders were placed through Health IQ, some of these materials were paid for with a credit card in the name of Daniel Vesely, who is an owner of XiQ and PharmaVoxx.

31.    At the time DTW was providing these materials to Health IQ, DTW was unaware that Health IQ and PharmaVoxx were related entities and/or alter egos of one another, or that PharmaVoxx was or was gearing up to be a competitor of DTW.

**D.    PharmaVoxx Enters The Market As A Competitor Of DTW**

32.    Upon information and belief, PharmaVoxx was founded on December 20, 2005 and in 2007 began competing with DTW by offering a service similar to CD Promo.

33.    PharmaVoxx's database is accessed via the website http://pharmavoxx.com and offers the same or similar type product to DTW's CD Promo, namely, a comprehensive database of pharmaceutical marketing and promotional literature.

34.    Shortly after discovering the PharmaVoxx website, DTW learned that Health IQ and PharmaVoxx had common owners and were located at the same address.

35.    In addition, DTW learned that PharmaVoxx was offering material on its database that dated back to 1999, well before PharmaVoxx's creation, but within the time period of documents provided to Health IQ by DTW.

36.    Thus, DTW became suspicious that PharmaVoxx was using materials in its database that had been provided to Health IQ by DTW, and on February 14, 2008, DTW's counsel wrote to PharmaVoxx, advising them that DTW believed that Health IQ was unlawfully distributing proprietary information obtained from CD Promo, by providing that information to PharmaVoxx to use on its competing database.

8

37.     PharmaVoxx and Health IQ denied using any of DTW's documents or proprietary information and denied any wrongdoing by PharmaVoxx and Health IQ.

**E.     Defendants Illegally Access And Download Materials From DTW's CD Promo Database.**

38.     In late September of 2009, DTW discovered that its database was being accessed from an IP address owned by XiQ and located at its offices, which are the same office as PharmaVoxx and Health IQ.

39.     Specifically, DTW learned that two of the user names and passwords for one of its large customers were used to perform thousands of searches from at least October 2008 through the present to access DTW's CD Promo database from defendants' offices. For at least a portion of this time period, Defendants would have had to have accessed and utilized Defendants' proprietary emageX software.

40.     During this time period, approximately 1647 documents, consisting of over 10,770 pages were viewed by the users from XiQ's IP Address. If these pages were purchased from DTW, the cost would be over $200,000.

41.     The client whose user names were improperly used is located at least 70 miles from Defendants' offices and, at times, accessed the database within minutes of when DTW's database was being accessed from Defendants' offices.

42.     The documents accessed and downloaded from the XiQ address were inputted on the CD Promo database as early as January of 2000 and as late as June of 2009.

43.     By improperly accessing CD Promo from the XiQ owned IP address, and illegally using DTW's proprietary software, Defendants not only downloaded and obtained confidential information and documents, but they were also able to see the inner workings, organization and structure of DTW's CD Promo database.

9

## COUNT I

### (Misappropriation of Confidential Information and Trade Secrets)

44.     DTW repeats each of the foregoing allegations as though fully set forth at length herein.

45.     The compilation of information, documentation and images on DTW's CD Promo database and system and the categorization and summaries of those materials constitute confidential information and protectable trade secrets.

46.     Heath IQ's use of DTW's services without revealing its connection to PharmaVoxx and Defendants' unlawfully accessing the CD Promo database and proprietary software without authorization permitted Defendants to acquire confidential and proprietary information about the CD Promo database, including the categorized and summarized information contained therein.

47.     Upon information and belief, Defendants misappropriated DTW's confidential and proprietary information and trade secrets on DTW's CD Promo database by using it to engage in unlawful competition with DTW.

48.     Defendants' use of DTW's trade secrets and confidential information to create and provide a competing database and system have caused significant harm to DTW.

49.     Unless Defendants are enjoined from using DTW's confidential and proprietary information, Defendants will continue to profit from their dishonest and unlawful exploitation of DTW's database of confidential and proprietary information, and they will have an unfair advantage in the pharmaceutical market research industry.

1210685.3

## COUNT II

### (Conversion)

50.     DTW repeats each of the foregoing allegations as though fully set forth at length herein.

51.     Defendants' use of DTW's property, namely documents, materials and information contained on the CD Promo database or obtained by Health IQ from DTW under false pretenses constitutes conversion of DTW's property, for which Defendants are liable.

52.     Defendants acted with actual malice, wrongful intent and willful disregard of DTW's rights.

53.     As a result of Defendants' action, DTW has suffered substantial damages.

## COUNT III

### (Tortious Interference with Prospective Business Relations)

54.     DTW repeats each of the foregoing allegations as though fully set forth at length herein.

55.     DTW created the concept for a comprehensive searchable database of pharmaceutical promotional materials, and launched CD Promo in 1996.

56.     Since launching CD Promo in 1996, DTW has acquired hundreds of customers due to the great value of the service provided by CD Promo.

57.     DTW has a reasonable expectation of economic advantage in selling its products and services, primarily, its CD Promo database.

58.     Defendants intentionally and without justification or excuse, interfered with DTW's relationships with its customers by misappropriating DTW's confidential database of information and using that information to create a competing database, and are attempting to

11

solicit and divert customers away from DTW, denying DTW of its reasonable expectation of economic benefit and advantage.

59.     Defendants' foregoing acts of tortious interference with prospective economic advantage have caused, and continue to cause, damages to DTW.

## COUNT IV

### (Unfair Competition)

60.     DTW repeats each of the foregoing allegations as though fully set forth at length herein.

61.     Defendants' conduct as alleged above was conceived in order to facilitate their plan to unlawfully compete against DTW through misappropriating DTW's confidential database of pharmaceutical information.

62.     Defendants' conduct as described herein is transgressive of generally accepted standards of commercial competition, morality and law, and accordingly violates common law principles relating to unfair competition.

63.     All the aforesaid unlawful acts were undertaken by Defendants willfully and maliciously, in bad faith, and for the purpose of injuring DTW in its business.

64.     As a result of Defendants' conduct, DTW has been damaged and unless Defendants are enjoined from their acts of unfair competition, DTW will be irreparably harmed.

## COUNT V

### (Violation of the Federal Computer Fraud and Abuse Act, 18 U.S.C.A. 1030)

65.     DTW repeats each of the foregoing allegations as though fully set forth at length herein.

1210685.3

66.     The Federal Computer Fraud and Abuse Act provides that any person who suffers damages or loss by reason of a violation of the Act may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.

67.     Violations of the act include intentionally accessing a computer database or website without authorization and thereby obtaining information from any protected computer database or website causing loss.

68.     Defendants intentionally and fraudulently accessed DTW's computer database and website without authorization and thereby downloaded and obtained DTW's confidential and proprietary information thereby causing loss to DTW.

69.     By this conduct, Defendants are in violation of 18 U.S.C.A. 1030 and are liable to DTW for compensatory and punitive damages including reasonable attorney's fees and the cost of litigation.

70.     DTW is entitled to compensatory damages for the unauthorized accessing and taking of its computer data, punitive damages and the costs of this action, including reasonable attorneys' fees, costs of investigation and costs of litigation.

## COUNT VI

**(Violations of the New Jersey Computer-Related Offenses Act § 2A:38A-3)**

71.     DTW repeats each of the foregoing allegations as though fully set forth at length herein.

72.     New Jersey Statute § 2A:38A-3 provides:

> A person or enterprise damaged in business or property as a result of any of the following actions may sue the actor therefore in Superior Court and may recover compensatory and punitive damages and the cost of the suit including a reasonable attorney's fee, costs of investigation and litigation:

1210685.3

a.     The purposeful or knowing, and unauthorized altering, damaging, taking or destruction of any data, data base, computer program, computer software or computer equipment existing, internally or externally to a computer, computer system or computer network

\*\*\*

c.     The purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system or computer network;

\*\*\*

e.     The purposeful or knowing accessing and reckless altering, damaging, destroying or obtaining of any data, database, computer, computer program, computer software, computer equipment, computer system or computer network.

73.     At all times, the data contained on the CD Promo database was the property of DTW.  In addition, the software needed to access the data until March 2009 was proprietary to DTW.

74.     Defendants have purposefully and knowingly accessed and taken data from DTW's website, network and database, and utilized its software without authorization from DTW.

75.     By this conduct, Defendants are in violation of New Jersey Statute § 2A:38A-3 and are liable to DTW for compensatory and punitive damages including reasonable attorney's fees and the cost of litigation.

76.     DTW is entitled to compensatory damages for the unauthorized accessing and taking of its computer data, punitive damages and the costs of this action, including reasonable attorneys' fees, costs of investigation and costs of litigation.

## COUNT VII

### (Violations of the California Computer Data Access and Fraud Act, California Penal Code § 502(c))

77.     DTW repeats each of the foregoing allegations as though fully set forth at length herein.

14

1210685.3

78.     California Penal Code § 502(c) provides that the owner or lessee of a computer, computer system, computer network, computer program, or data who suffers damage or loss by reason of a violation of any of the following provisions of subdivision (c) may bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief:

> (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.
>
> (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.
>
> (3) Knowingly and without permission uses or causes to be used computer services.
>
> ***
>
> (5) Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.
>
> (6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.
>
> (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

79.     Defendants knowingly accessed CD Promo without permission, and downloaded, took and used data from DTW's website and computer database in order to execute their scheme to obtain and use DTW's confidential and proprietary information and documents.

1210685.3

80.     By improperly using the usernames, passwords and proprietary viewer software of a customer of DTW, Defendants knowingly and without permission utilized DTW's resources and bandwidth.

81.     By this conduct, Defendants are in violation of California Penal Code § 502(c) and are liable to DTW for compensatory and punitive damages including reasonable attorney's fees and the cost of litigation.

82.     DTW is entitled to compensatory damages for the unauthorized accessing and taking of its computer data, punitive damages and the costs of this action, including reasonable attorneys' fees, costs of investigation and costs of litigation.

## COUNT VIII

### (Fraud)

83.     DTW repeats each of the foregoing allegations as though fully set forth at length herein.

84.     Defendants surreptitiously gained access to DTW's documents and information by having Health IQ retain DTW to provide these documents.

85.     At no time while DTW was providing these documents did Health IQ reveal that it related to or was the alter-ego of PharmaVoxx which would subsequently enter the market as a competitor of DTW.

86.     Defendants also downloaded and used DTW's proprietary emageX software without approval from DTW.

87.     Additionally, Defendants gained access to DTW's CD Promo database by using a username and password issued by DTW to employees of one of DTW's customers.

88.     In unlawfully accessing CD Promo with another's username and password, Defendants represented that they were authorized users and clicked on the click-through

16

agreement to that effect.  Defendants were aware that they were not authorized to access the CD Promo database.

89.     At all relevant times Defendants were aware that they were obtaining these documents and accessing DTW's database so that PharmaVoxx could use them in competition with DTW.

90.     As a result of Defendants' fraudulent activity and unauthorized access to CD Promo, DTW has suffered and will continue to suffer damages.

## COUNT IX

### (Civil Conspiracy)

91.     DTW repeats each of the foregoing allegations as though fully set forth at length herein.

92.     All of the aforesaid acts of Defendants were undertaken in furtherance of a common plan and conspiracy to accomplish the unlawful objectives described herein, which include unlawfully accessing DTW's CD Promo database in order to unfairly compete with DTW and drive it out of business.

93.     In furtherance of their unlawful scheme, Defendants have employed illegal, tortious, fraudulent, anti-competitive and unethical practices set forth herein, including, but not limited to illegally accessing DTW's CD Promo database and misappropriating DTW's confidential and proprietary information.

94.     All of the aforesaid acts were undertaken by Defendants willfully and maliciously, in bad faith and for the purpose of damaging and interfering with DTW's business, goodwill and business relationships.

95.     As a result of Defendants' conduct, DTW has been damaged.

1210685.3

## COUNT X

### (Breach of Contract)

96.     DTW repeats each of the foregoing allegations as though fully set forth at length herein.

97.     Upon information and belief, when Defendants accessed CD Promo from the IP address owned by XiQ, the user acknowledged the click-through agreement, thereby agreeing to the Terms of Use.

98.     In breach of Defendants' obligations pursuant to the click-through agreement, Defendants used the materials it downloaded or otherwise obtained from CD Promo and/or DTW to assist PharmaVoxx in creating and providing a product that directly competes with CD Promo, and otherwise breached the terms of the click-through agreement.

99.     As a result of Defendants' conduct, DTW has suffered and continues to suffer actual damages for which it seeks recovery herein.

**WHEREFORE**, DTW demands:

A.     An Order permanently enjoining Defendants from:

    (1)     accessing DTW's CD Promo database.

    (2)     utilizing any documents, materials or information obtained from DTW's CD Promo database, DTW's website, or any other of DTW's confidential or proprietary information;

B.     An Order requiring Defendants to return to DTW any of DTW's confidential or proprietary information, including documents, materials and information downloaded or obtained from DTW's CD Promo database or DTW's website;

C.     An accounting of all sales or profits made by Defendants as a result of the acts complained of herein, including profits derived from the use of DTW's confidential or proprietary information, documents, materials and information obtained from DTW directly or from the CD Promo database.

D.     A judgment for compensatory damages in an amount to be determined at trial;

18

E.      A judgment for punitive damages;

F.      A judgment for costs, including reasonable attorneys' fees; and

G.      Such other relief as to the Court appears just and proper.


                        WOLFF & SAMSON PC
                        Attorneys for Plaintiff
                        dtw Marketing Research Group, Inc.


                By:    /s/ Adam K. Derman
                        ADAM K. DERMAN

Dated:  December 14, 2009

## JURY DEMAND

Plaintiffs demand trial by jury of all claims and defenses in this action so triable.

> WOLFF & SAMSON PC
> Attorneys for Plaintiff
> dtw Marketing Research Group, Inc.


> By:   */s/ Adam K. Derman*
>        ADAM K. DERMAN

Dated:  December 14, 2009

## LOCAL RULE 11.2 CERTIFICATION

The matter in controversy is not the subject of any other action pending in any other court or any pending arbitration or administrative proceeding.

> WOLFF & SAMSON PC
> Attorneys for Plaintiff
> dtw Marketing Research Group, Inc.


> By:   */s/ Adam K. Derman*
>        ADAM K. DERMAN

Dated:  December 14, 2009

1210685.3

**EXHIBIT 'A'**

**CD PROMO WorldWide Terms of Use and Licensing Agreement**

These terms and conditions ("Terms") govern your use of CD Promo. Your use of CD Promo indicates your agreement to the Terms below.

## Regarding the CD Promo Database

You (the "Client") acknowledge and agree that:

- (i) dtw's CD Promo Database (the "Database") is **confidential and proprietary information and/or original work of authorship compiled and owned by dtw**, and (ii) Client shall **keep in confidence and protect dtw's Database from disclosure to unauthorized parties** and restrict its use as provided herein.

- Client agrees to use the Database and all information obtained therefrom **solely for its internal professional and/or business purposes** and not for any other purpose. Further, the Client shall not: (i) access/use the Database for the benefit of third parties, or (ii) provide any information from the Database to third parties, including without limitation to any third party market research companies, (iii) permit the use, duplication, reproduction, copying or disclosure of the Database and/or the information contained therein, or otherwise make the Database available for any purpose to any unauthorized party, including without limitation to any third party market research companies. For example, and not by way of limitation, Client agrees that it shall not (i) resell information from the Database; (ii) use or allow third parties to use information from the Database for the purpose of compiling, enhancing, verifying, supplementing or deleting from any compilation of information which is sold published, furnished or in any manner provided to a third party, including without limitation to any third party market research companies even if such companies are undertaking market research or other projects for client; or (iii) use the information from the Database in any service or product provided by the Client or any third party, including without limitation to any third party market research companies.

- Client further acknowledges and agrees that it has been furnished with a Password for use by it to access the Database. The Password provides vital security in preventing unauthorized access to the Database and the confidential information contained therein. Client is responsible for keeping and maintaining the security of each Password that is assigned to it and shall have sole and exclusive responsibility for any unauthorized access to the Database that results from Client's failure to keep the assigned Password(s) secure. Client shall be primarily liable for the acts of omissions of its employees, subcontractors, other agents and/or any such person or entity to whom or to which it disclosed or revealed its Password.

- When in the course of Client's business, Client desires to disclose a portion of information from the Database to a third party or to the public, Client shall request dtw's prior written consent. dtw may withhold such consent if in dtw 's sole discretion such disclosure would cause or threaten harm and loss to dtw 's proprietary rights in the Database and/or other services rendered by dtw . Client acknowledges and agrees that Client may only grant access to the Database to third parties upon execution of and in compliance with a valid written Third-Party Access Agreement from dtw. This Agreement must be signed by all parties (vendor, client and dtw ) prior to the release of any information.

- Client shall use its best efforts to assist dtw in identifying any violations of this non-disclosure provision. In the event that Client permits a third party to violate the terms of this non-disclosure provision or knowingly fails to identify an unauthorized user, then Client shall indemnify and hold harmless dtw from any and all damages and expenses of any kind, including reasonable attorneys' fees, for harm incurred by dtw as a result of any breach of this license agreement, including this non-disclosure provision. Client also agrees that it will indemnify and hold harmless dtw from any and all liability, actions, claims, costs, damages and expenses of any kind, including reasonable attorneys' fees, which may be brought by a third party for the wrongful actions of Client.

- Client also agrees and understands that neither this license agreement nor this non-disclosure provision shall be construed as granting Client any right of access for any purpose, including Client's internal professional and/or business use, to any domestic or foreign dtw Database which is not the subject of a subscription agreement between Client and dtw .

- All Client obligations and undertakings relating to confidential information and non-disclosure of same shall survive the termination of this license agreement for whatever reason.

## Regarding CD Promo Web Access Accounts

All CD Promo accounts are programmed to expire at the end of the calendar year. All fees for CD Promo are reflective of activation costs and are not discounted or pro-rated.

CD Promo uses **special browser plug-in software** that must be downloaded & installed from the CD Promo website in order to view the CD Promo images. If this does not comply with the subscribing company's policies, special installation terms can be negotiated. The license that is provided with this browser plug-in software is a **single workstation license**. Client is solely responsible for Client's compliance with the terms of this license agreement, and shall be liable to the owner of the special browser plug-in software for any violations of that license.

dtw is responsible for technical support with regard to only CD Promo and will provide limited support to subscribers who have downloaded the browser plug-in software from the CD Promo website; full technical support for the browser plug-in software will be provided by the software's manufacturer.

dtw and the browser plug-in software manufacturer cannot be held responsible for policies drafted by the subscribing company that may prevent CD Promo and/or the browser plug-in software from functioning appropriately. dtw suggests that, if the subscribing company is a first time CD Promo user, the IT/MIS Department of the subscribing company beta test the browser plug-in software in order to ensure system compatibility.

**Injunctive Relief**.  In the event of a violation or threatened violation of dtw's intellectual property rights or proprietary rights, dtw shall have the right, in addition to such other remedies as may be available pursuant to law or this Agreement, to temporary or permanent injunctive relief enjoining such act or threatened act (without the posting of any bond).  The parties acknowledge and agree that legal remedies for such violations or threatened violations are inadequate and that dtw would suffer irreparable harm..

**Limitation of Warranties**.  CLIENT UNDERSTANDS AND AGREES THAT THE SYSTEM IS PROVIDED "AS IS."  EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREIN dtw AND ITS THIRD PARTY PROVIDERS SPECIFICALLY DISCLAIM, WITHOUT LIMITATION, ALL WARRANTIES OF ANY KIND TO CLIENT , ITS USERS AND ANY OTHER THIRD PARTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, OR THOSE WARRANTIES ARISING FROM A COURSE OF PERFORMANCE, A COURSE OF DEALING OR TRADE USAGE.  dtw AND ITS THIRD PARTY PROVIDERS MAKE NO REPRESENTATION OR WARRANTY THAT THE SYSTEM,  OR ANY INFORMATION, REPORTS, MATERIALS OR SERVICES OBTAINED FROM OR GENERATED BY THE SYSTEM, WILL MEET CLIENT'S REQUIREMENTS OR BE UNINTERRUPTED, TIMELY, SECURE, COMPLETE, ACCURATE OR FREE FROM ERROR OR DEFECT.  dtw MAKES NO REPRESENTATIONS, WARRANTIES OR GUARANTEES AS TO ANY RECOMMENDED EQUIPMENT TO BE USED WITH THE SYSTEM, INCLUDING, WITHOUT LIMITATION, THE FAULT TOLERANCE OF THE SYSTEM.  CLIENT IS RESPONSIBLE FOR VERIFYING THE RESULTS OF ALL USES OF AND RESULTS AND REPORTS PROVIDED BY THE SYSTEM AND FOR TESTING THE SYSTEM BEFORE CLIENT USES THE SYSTEM IN CONNECTION WITH ITS BUSINESS.  CLIENT'S SOLE AND EXCLUSIVE REMEDY FOR ANY FAILURE IN PERFORMANCE OF THE SYSTEM, IS TO TERMINATE THIS AGREEMENT.

**Limitation of Liability**.  The parties acknowledge that the limitations set forth in this Section are integral to the amount of fees levied in connection with this Agreement, and that, were dtw to assume any further liability other than as set forth herein, such fees would of necessity be set substantially higher.  IT IS UNDERSTOOD AND AGREED THAT dtw AND ITS THIRD PARTY PROVIDERS (THEIR OFFICERS, DIRECTORS, AGENTS AND ANY ENTITY CONTROLLING, CONTROLLED BY OR UNDER COMMON CONTROL) SHALL HAVE NO LIABILITY TO CLIENT OR ANY THIRD PARTY FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES (INCLUDING, BUT NOT LIMITED TO LOSS OF PROFIT, LOST DATA, LOSS OF USE OF THE SYSTEM, BUSINESS INTERRUPTION, LOSS OF BUSINESS REPUTATION OR GOODWILL, COSTS OF SUBSTITUTE SERVICES, OR DOWNTIME COSTS), HOWEVER CAUSED AND UNDER ANY THEORY OF LIABILITY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SYSTEM, EVEN IF dtw HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES AND NOTWITHSTANDING ANY FAILURE OF ESSENTIAL PURPOSE OF ANY REMEDY.  dtw AND ITS THIRD PARTY PROVIDERS (THEIR OFFICERS, DIRECTORS, AGENTS AND ANY ENTITY CONTROLLING, CONTROLLED BY OR UNDER COMMON CONTROL WITH dtw OR ITS THIRD PARTY PROVIDERS) HAVE NO LIABILITY TO CLIENT OR ANY THIRD PARTY FOR ANY (I) LOSS, CORRUPTION, ERROR, OMISSION, INACCURACY OR DELAY OF DATA OR INFORMATION RETAINED IN THE SYSTEM OR PRODUCED BY THE SYSTEM, OR (II) CIRCUMSTANCES BEYOND THE REASONABLE CONTROL OF dtw.  NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE AGGREGATE LIABILITY OF dtw AND ITS THIRD PARTY PROVIDERS (THEIR OFFICERS, DIRECTORS, AGENTS AND ANY ENTITY CONTROLLING, CONTROLLED BY OR UNDER COMMON CONTROL WITH dtw OR ITS THIRD PARTY PROVIDERS) FOR DAMAGES FOR ANY CAUSE WHATSOEVER RELATING TO OR ARISING OUT OF THIS AGREEMENT OR THE SYSTEM, AND REGARDLESS OF THE FORM OF ACTION, SHALL BE LIMITED THE TOTAL SYSTEM LICENSE FEES PAID BY CLIENT TO dtw DURING THE THREE (3) MONTHS PRIOR TO THE CLAIM(S).

2