**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DTW MARKETING RESEARCH GROUP, INC., Plaintiff, | : | Civil Action No. 2:09-cv-06302-SRC-MAS |
| vs. | : | |
| THE VOXX GROUP, LLC d/b/a PHARMA VOXX, HEALTHIQ, LLC, XIQ, LLC, JOHN DOES 1-99 and JANE DOES 1-99, Defendants. | : | ***(Document Electronically Filed)*** |

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE TO TRANSFER VENUE**

---

SILLS CUMMIS & GROSS P.C.
The Legal Center
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-7000
*Attorneys for Defendants*
*The Voxx Group LLC d/b/a Pharma Voxx, HealthIQ LLC, and xIQ LLC*

# TABLE OF CONTENTS

PAGE

**PRELIMINARY STATEMENT** .......... - 2 -

**STATEMENT OF FACTS** .......... - 4 -

**ARGUMENT** .......... - 7 -

THE CLAIMS AGAINST HEALTHIQ AND XIQ SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION .......... - 7 -

ALL CLAIMS AGAINST XIQ AND THE FRAUD AND BREACH OF CONTRACT CLAIMS AGAINST PHARMA VOXX AND XIQ SHOULD BE DISMISSED .......... - 9 -

THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE DISTRICT OF NEW JERSEY IS AN INCONVENIENT VENUE .......... - 11 -

IF THE COMPLAINT IS NOT DISMISSED THE COURT SHOULD TRANSFER THE CASE TO THE CENTRAL DISTRICT OF CALIFORNIA .......... - 14 -

**CONCLUSION** .......... - 16 -

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Amberson Holdings LLC v. Westside Story Newspaper,
110 F. Supp. 2d 332 (D.N.J. 2000) ....................8

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985) ....................7

Carteret Sav. Bank, FA v. Shushan,
954 F.2d 141 (3d Cir. 1992) ....................7

Hoffer v. Infospace.com, Inc.,
102 F. Supp. 2d 556 (D.N.J. 2000) ....................15

Jumara v. State Farm Ins. Co.,
55 F.3d 873 (3d Cir. 1995) ....................15

Lacey v. Cessna Aircraft Co.,
862 F.2d 38 (3d Cir. 1988) ....................11

Marten v. Godwin,
499 F.3d 290 (3d Cir. 2007) ....................7

Mellon Bank (East) PSFS, M.A. v. DiVeronica Bros., Inc.,
983 F.2d 551 (3d Cir. 1993) ....................7

Naporano Iron & Metal Co. v. American Crane Co.,
79 F. Supp. 2d 494 (D.N.J. 1999) ....................11

Piper Aircraft v. Reyno,
454 U.S. 235 (1981) ....................11

Provident Nat'l Bank v. CA Fed. Sav. & Loan Assoc.,
819 F.2d 434 (3d Cir. 1987) ....................7

Seltzer v. I.C. Optics, Ltd.,
339 F. Supp. 2d 601 (D.N.J. 2004) ....................9

Severinsen v. Widner University,
338 N.J. Super. 42 (App. Div. 2001) ....................8

Stewart Int'l Enhanced Index Fund v. Carr,
2010 U.S Dist. LEXIS 5047 (D.N.J. Jan. 22, 2010) ....................11

Page

Tishio v. Bontex, Inc.
16 F. Supp.2d 511 (D.N.J. 1998) ....................15

Van Dusen v. Barrack,
376 U.S. 612 (1964) ....................15

Victaulic Co. v. Tieman,
499 F.3d 227 (3d Cir. 2007) ....................10

Windt v. Qwest Communications Int'l, Inc.,
544 F. Supp. 2d 409 (D.N.J. 2008) ....................11, 12

**STATUTES**

28 U.S.C. 1404(a) ....................14

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 9(b) ....................10

Fed. R. Civ. Proc. 12(b)(2) ....................7

**PRELIMINARY STATEMENT**

Plaintiff dtw Marketing Research Group, Inc.'s ("DTW") Complaint against Defendants The Voxx Group LLC d/b/a Pharma Voxx ("Pharma Voxx"), HealthIQ LLC ("HealthIQ") and xIQ LLC ("xIQ") should be dismissed for lack of personal jurisdiction and *forum non conveniens*, or, in the alternative, transferred to the Central District of California. Moreover, all DTW's allegations against xIQ should be dismissed for failure to state a claim upon which relief can be granted. Similarly, DTW's fraud and breach of contract claims against Pharma Voxx and xIQ are insufficiently pled and should be dismissed.

DTW alleges that HealthIQ accessed its CD Promo database, and provided confidential information to Pharma Voxx, who used it for a competing product. DTW alleges that the information was obtained both directly from it by HealthIQ between 2004 and 2007, and using the account information of one of DTW's large clients in 2008 and 2009.

HealthIQ is a California limited liability company with its principal place of business in Orange, CA. Anthony Page and Daniel Vesely, both California residents, each own 50% of HealthIQ. It has no headquarters, no offices, no places of business, no employees or agents, no real property, no assets, and no bank accounts in New Jersey. HealthIQ has no customers in New Jersey, and derives no revenue from New Jersey. HealthIQ is a pharmaceutical market research company, which collects and analyzes competitor information to help its clients develop more effective product development and marketing strategies. HealthIQ does not directly advertise in New Jersey, and does not solicit business in New Jersey. Between 2004 and 2007, HealthIQ made several requests directly to DTW for information from the CD Promo database. These requests were made from California, and DTW sent the results of its work to HealthIQ in California. In 2008 and 2009, HealthIQ accessed DTW's CD Promo database acting as the agent

of a large pharmaceutical company that has an agreement with DTW that apparently allows it full access to the CD Promo database. Notably, that company is located in California.

Similarly, Pharma Voxx is a California limited liability company with its principal place of business in Orange, CA. Pharma Voxx is a wholly owned subsidiary of xIQ, a California limited liability company. Pharma Voxx has no headquarters, no offices, no places of business, no employees or agents, no real property, no assets and no bank accounts in New Jersey. Pharma Voxx markets a database of pharmaceutical industry promotional materials. Pharma Voxx does not advertise in New Jersey. DTW alleges that Pharma Voxx has incorporated confidential information obtained by HealthIQ into its database. While no such incorporation occurred, all of the data included in Pharma Voxx's database is processed in California.

xIQ is a holding company, which owns Pharma Voxx and several other companies not relevant to this case. Anthony Page and Daniel Vesely, both California residents, each own 50% of xIQ. xIQ has no clients of its own, and merely provides the administrative infrastructure for its subsidiaries. xIQ's activities are confined to California, and it does not compete with DTW (or any other company). DTW makes no allegation that xIQ engaged in any conduct related to the alleged wrongs at all, let alone any conduct outside the state of California.

Despite the near complete absence of any contacts between HealthIQ, xIQ and New Jersey, and that all of the allegedly wrongful conduct took place outside of New Jersey, DTW maintains that this Court has personal jurisdiction over HealthIQ and xIQ. They are wrong, and the Complaint should be dismissed as to those Defendants. Additionally, since DTW has failed to allege a single fact supporting xIQ's involvement in any of the wrongful conduct, the claims against xIQ should be dismissed. Similarly, because DTW has failed to properly plead its fraud claims against xIQ and Pharma Voxx, those claims should also be dismissed.

Moreover, the entire Complaint should be dismissed because the District of New Jersey is an inconvenient forum for this dispute. This action would be more properly brought in the Central District of California. All of the Defendants reside there. Resolution of Plaintiff's claims will require discovery regarding the status and content of Pharma Voxx's database, which is located in California. The third party client, upon whose authority HealthIQ accessed DTW's database, resides in the Central District of California. The majority of the witnesses reside in California. Litigating in California will not inconvenience DTW, as its Complaint expressly notes that it operates "worldwide" and, at least by virtue of its contract with the third party client, does substantial business in California. Finally, DTW has made both New Jersey and California state law claims against Defendants, and would not be prejudiced by litigating in California. For these reasons, the Complaint should be dismissed, or, in the alternative, transferred to the Central District of California.

## STATEMENT OF FACTS

Defendant HealthIQ is a California limited liability company with its principal place of business in Orange, CA. (Complaint ¶ 6; Certification of Anthony Page (hereinafter, "Page Cert.") ¶ 2). Anthony Page and Daniel Vesely each own 50% of Health IQ. (Page Cert. ¶¶ 1, 3). Mr. Page is Health IQ's Managing Director, and Mr. Vesely formerly served as HealthIQ's Director of Operations. (Page Cert. ¶¶ 1, 3). HealthIQ is a health care consulting firm that analyzes competitor information to assist its clients in developing more effective product development and marketing strategies. (Complaint ¶ 6; Page Cert. ¶ 4). HealthIQ has no customers or clients in New Jersey and obtains none of its revenue from New Jersey (Page Cert. ¶ 5). HealthIQ does not advertise its services and does not solicit customers in New Jersey. (Page Cert. ¶ 6). HealthIQ has no office in New Jersey, no employees in New Jersey, and no assets in New Jersey. (Page Cert. ¶ 7).

Defendant Pharma Voxx is a California limited liability company with its principal place of business in Orange, CA (Complaint ¶ 5; Page Cert. ¶ 8). Pharma Voxx maintains a searchable database of pharmaceutical industry promotional materials. (Complaint ¶ 5; Page Cert. ¶ 9). Pharma Voxx does not advertise in New Jersey, and it has no offices, employees or assets in New Jersey. (Page Cert. ¶ 10).

Defendant xIQ is a California limited liability company with its principal place of business in Orange, CA (Complaint ¶ 7; Page Cert. ¶ 11). xIQ is a holding company, of which Pharma Voxx is one of its wholly-owned subsidiaries. (Page Cert. ¶ 12). Anthony Page and Daniel Vesely each own 50% of xIQ, and both serve as xIQ Managing Directors. (Page Cert. ¶¶ 1, 13). xIQ has no clients of its own, and only provides administrative support to its subsidiaries. (Page Cert. ¶ 14). Despite common ownership, xIQ, HealthIQ and Pharma Voxx maintain separate financial records and accounts, and each company observes separate corporate formalities. (Page Cert. ¶ 15).

Plaintiff DTW is a New Jersey corporation with its principal place of business in Flanders, N.J. (Complaint ¶ 4). DTW is allegedly a pharmaceutical market research firm, and markets a searchable database of pharmaceutical promotional materials (Id.) DTW's database, known as "CD Promo," includes materials collected from healthcare professionals. (Id. at ¶ 15). DTW provides subscription access to CD Promo via the Internet, making it accessible to clients worldwide. (Id. at 23). DTW also provides access to CD Promo materials through individual requests—in these cases, DTW compiles the information requested by the client and delivers the information to the client. (Id. at 26).

Pursuant to specific client requests, HealthIQ examines promotional materials as part of its contract work; this is relatively low level project work. (Page Cert. ¶ 16). Between 2004 and

2007, HealthIQ made several requests for individual searches of DTW's CD Promo database. (Complaint ¶¶ 27-29; Page Cert. ¶ 16). To obtain the material it desired for its client assignments, HealthIQ would contact DTW with its request. (Page Cert. ¶ 16). In response, DTW would provide a list of available materials and an estimate of cost. (Id.). HealthIQ would indicate which materials it desired and DTW would print and ship available materials to HealthIQ in California. (Id.). All of the materials received as a part of these requests were made on behalf of HealthIQ clients, and were incorporated into HealthIQ client project deliverables. (Id.).

Based on complaints from customers that included the tedious nature of the CD Promo process, Anthony Page and Daniel Vesely decided to create a promotional materials database. (Page Cert. ¶ 17). In November 2005, Pharma Voxx was founded as a wholly-owned subsidiary of xIQ. (Page Cert. ¶ 18). The Pharma Voxx database was launched in 2007 with several features not available from CD Promo. (Page Cert. ¶ 19). Information collected for the Pharma Voxx database has always been processed at its California location. (Page Cert. ¶ 20). None of the information obtained by HealthIQ from DTW was incorporated into the Pharma Voxx database. (Page Cert. ¶ 21).

In 2008 and 2009, at the request of a large pharmaceutical client, HealthIQ directly accessed the CD Promo database via the Internet. (Complaint ¶¶ 38-40; Page Cert. ¶ 22). The client provided HealthIQ with its user names and passwords. (Complaint ¶ 39; Page Cert. ¶ 23). That client, located in California, was also a large DTW customer and from the complaint it is apparently charged $200,000 annually to have use of the CD Promo database. (Complaint ¶¶ 39, 41; Page Cert. ¶ 24). Pharma Voxx was unaware that HealthIQ had directly accessed this

information, and did not incorporate any of it into its database which is separate from the HealthIQ database. (Page Cert. ¶ 25).

## ARGUMENT

### THE CLAIMS AGAINST HEALTHIQ AND XIQ SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

Pursuant to Fed. R. Civ. P. 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction. In assessing personal jurisdiction, a federal court sitting in diversity must look to the law of the forum state; in this case, New Jersey. Mellon Bank (East) PSFS, M.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 554 (3d Cir. 1993). Pursuant to the New Jersey long-arm rule, R. 4:4-4(c), personal jurisdiction in New Jersey extends to the limits of Due Process. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992). Thus, a defendant is only subject to personal jurisdiction if it has certain minimum contacts with the proposed forum state based upon its purposeful availment "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

If a defendant challenges personal jurisdiction, then the plaintiff bears the burden of establishing that jurisdiction exists. Marten v. Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007). A plaintiff may meet this burden by establishing that the cause of action asserted arose from the defendant's activities in the forum state ("specific jurisdiction"), or by establishing that the defendant had systematic and continuous contacts with the forum state ("general jurisdiction"). Provident Nat'l Bank v. CA Fed. Sav. & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987).

DTW cannot establish specific jurisdiction with respect to HeathIQ or xIQ. The only activity related to the causes of action in the Complaint connected to New Jersey in any way was HealthIQ's accessing of the DTW database. HealthIQ, however, accessed the database from

California. The only contact with New Jersey is that DTW's database is allegedly physically located in New Jersey. This contact is coincidental and *de minimus*, and is not sufficient to support personal jurisdiction. See, e.g., Amberson Holdings LLC v. Westside Story Newspaper, 110 F. Supp. 2d 332, 336 (D.N.J. 2000)(holding that defendant's use of an Internet server physically located in New Jersey was insufficient to confirm personal jurisdiction). Plaintiff simply does not allege that xIQ engaged in any activity in New Jersey, let alone activity related to DTW's allegations.

With respect to general jurisdiction, neither HealthIQ nor xIQ have systematic and continuous contacts with New Jersey. In order to establish general jurisdiction, a defendant's contacts with the proposed forum must be "pervasive." Severinsen v. Widner University, 338 N.J. Super. 42, 46-47 (App. Div. 2001). Thus, general jurisdiction only arises where the defendant regularly conducts substantial business, solicits, advertises, or has offices or employees in the proposed forum state. Id. at 42.

Neither HealthIQ nor xIQ have any contacts with New Jersey. HealthIQ has no customers in New Jersey, does not advertise or solicit in New Jersey, has no office in New Jersey, no employees in New Jersey, and no assets in New Jersey. HealthIQ's only connection to New Jersey is that the database that HealthIQ accessed from California was physically located in New Jersey.

Plaintiff has not alleged that xIQ has any contacts with New Jersey. As a holding company located in California, xIQ has no clients at all, and does not advertise at all. Moreover, xIQ has no offices, employees or assets in New Jersey. To the extent that DTW seeks to establish jurisdiction over xIQ based on its ownership of Pharma Voxx or that it has common owners with HealthIQ, those arguments are unavailing. First, in order for xIQ's relationship

with HealthIQ to be relevant, DTW would need to establish jurisdiction over either of those entities. As discussed above, it can not. With respect to Pharma Voxx, it is well-settled that the contacts of a subsidiary can not be imputed to a parent corporation for jurisdictional purposes based solely on ownership. Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 609 (D.N.J. 2004). While DTW alleges that xIQ treated Pharma Voxx and HealthIQ as its "alter ego[s]," it has not pled facts sufficient to support that claim. Common ownership alone is insufficient to establish that one corporation is the "alter ego" of another. See Seltzer, 339 F. Supp. 2d at 611. In order to be deemed an "alter ego," a parent must so dominate a subsidiary that it cannot be said to have a separate existence and is a mere conduit for the parent. Id. at 610. That is plainly not the case here. Despite common ownership, xIQ, HealthIQ and Pharma Voxx maintain separate financial records and accounts, and each company observes separate corporate formalities. As a result, neither Pharma Voxx nor HealthIQ can be treated as the "alter ego" of xIQ for jurisdictional purposes.

Thus, because this Court lacks both specific and general personal jurisdiction as to HealthIQ and xIQ, the claims against them should be dismissed.

**ALL CLAIMS AGAINST XIQ AND THE FRAUD AND BREACH OF CONTRACT CLAIMS AGAINST PHARMA VOXX AND XIQ SHOULD BE DISMISSED**

Plaintiff's claims against xIQ should be dismissed because Plaintiff has not pled any facts that support the inference that xIQ was involved in any wrongful conduct. Indeed, Plaintiff has not pled any facts that support the inference that xIQ engaged in any conduct at all.

Plaintiff's allegations center around three allegedly wrongful acts. First, Plaintiff claims that HealthIQ wrongfully obtained information from DTW's CD Promo database and provided it to Pharma Voxx. (Complaint ¶ 27-31). Second, Plaintiff claims that Pharma Voxx wrongfully used its information in a competing database. (Complaint ¶ 32-37). Third, Plaintiff claims that

HealthIQ wrongfully accessed DTW CD Promo database via the Internet and provided the information obtained to Pharma Voxx (Complaint ¶ 38-43). Nowhere does Plaintiff allege the xIQ participated in any of this conduct. DTW simply asserts that xIQ conspired with the other Defendants or used them as its "alter ego." Neither of these conclusory allegations have any factual support, and without more, are insufficient to support any inference that xIQ participated in any wrongful conduct.

In its Complaint, DTW attempts to conceal this deficiency by simply alleging all of its causes of action as against "Defendants." In the absence of any factual allegations, however, DTW's claims against xIQ are simply speculation without any support. This type of pleading is insufficient, and for that reason, the claims against xIQ should be dismissed. Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007)("[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

For similar reasons, the fraud claims alleged must also fail. The basis for Plaintiff's computer and common law fraud claims is that "Defendants" gained unauthorized access to the CD Promo database. (Complaint ¶ 67-68, 74, 79, and 88). No specific allegation is made that either Pharma Voxx or xIQ gained unauthorized access to the CD Promo database. The password and user names involved were given to and used by HealthIQ. (Page Cert. ¶ 22). The computer and common law fraud claims, however, simply make a collective allegation against "Defendants" (Complaint ¶ 69, 75, 81, and 90). As such, the fraud claims against Pharma Voxx and xIQ are insufficient under Fed. R. Civ. Proc. 9(b), and Counts V, VI, VII, and VIII of the Complaint should also be dismissed as to those Defendants. See Naporano Iron & Metal Co. v.

American Crane Co., 79 F. Supp. 2d 494, 511 (D.N.J. 1999)("[p]leadings containing collectivized allegations against 'defendants' do not suffice.").

The breach of contract allegation in Count X is similarly defective. The basis for this claim is that "Defendants" acknowledged DTW's click-through agreement while accessing their database. (Complaint ¶ 97). No specific allegation is made that supports the inference that either Pharma Voxx or xIQ ever accessed the DTW database or acknowledged the click-through agreement. As such, there can be no contract between xIQ or Pharma Voxx and DTW and Count X should be dismissed.

**THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE DISTRICT OF NEW JERSEY IS AN INCONVENIENT VENUE**

Under the doctrine of *forum non conveniens*, a court has the discretion to decline jurisdiction where the underlying principles of justice and convenience favor dismissal. A court "may dismiss a case when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish. . .oppressiveness and vexation to defendant. . .out of all proportion to plaintiff's convenience." Lacey v. Cessna Aircraft Co., 862 F.2d 38, 42 (3d Cir. 1988); see also Piper Aircraft v. Reyno, 454 U.S. 235, 258 (1981). In some circumstances, Plaintiff's choice of forum is given significant deference, however, as here, if the evidence and conduct at issue are concentrated elsewhere, then that deference is reduced. Stewart Int'l Enhanced Index Fund v. Carr, 2010 U.S Dist. LEXIS 5047 at *24 (D.N.J. Jan. 22, 2010). As a practical matter, evaluating a *forum non conveniens* motion involves a two-pronged analysis.

First, the Court must determine whether an adequate alternative forum is available. Windt v. Qwest Communications Int'l, Inc., 544 F. Supp. 2d 409, 415 (D.N.J. 2008). Two conditions must be met to establish that an alternative forum is adequate: 1) the defendant must

be amenable to process in the alternative forum; and 2) the subject matter of the lawsuit must be cognizable in the alternative forum in order to provide the plaintiff with redress. Id. at 417-18.

There is no doubt that the Central District of California is an adequate alternative forum. As Plaintiff notes in its pleading, each Defendant has its principal place of business in Orange, CA, making it amenable to process in the Central District of California. (Complaint ¶ 5-7). Moreover, the subject matter of the lawsuit is cognizable under California law. The underlying claims involve allegations of fraud, misappropriation and unauthorized use of Plaintiff's alleged confidential information. These types of claims are clearly cognizable under California law. Indeed, Plaintiff expressly alleges a violation of a California statute in its Complaint. (Complaint ¶ 77-82).

Once an adequate alternative forum is established, the Court assesses whether the relevant public and private interest factors weigh heavily in favor of that alternative forum. Windt, 544 F. Supp. 2d at 415. The public interests to be considered include: 1) having local disputes settled locally; 2) avoiding difficulties of applying foreign law; and 3) avoiding burdening jurors with cases irrelevant to their community. Id. at 419. The private interests to be considered include: 1) ease of access to the evidence; 2) the cost of witnesses attending trial; 3) the availability of compulsory process; and 4) other factors that might shorten trial or make it less expensive. Id.

Considering each factor in turn, it is clear that the balance weighs heavily in favor of litigating in the Central District of California. All of the Defendants are residents of California. (Complaint ¶ 5-7). Plaintiff, while located in New Jersey, transacts substantial business in California. (Complaint ¶ 39 (referring to the use of the user names and passwords of one of DTW's "large" customers)). The allegedly wrongful conduct took place in California.

Plaintiff's Complaint seeks to enjoin Defendant from "accessing DTW's CD Promo database" and "utilizing any documents, materials or information obtained from DTW's CD Promo database, DTW's website, or any other of DTW's confidential or proprietary information." (Complaint ¶ A(1) & (2)). Thus, the remedy for DTW's allegations involves enjoining conduct in California. Finally, the third party client who authorized Defendant's use of Plaintiff's database is located in California. Since HealthIQ accessed CD Promo on that third party's behalf, a resolution of this case will directly affect that third party California-based corporation. New Jersey courts do not have an interest in locally resolving a dispute between California companies and a New Jersey company doing business in California. Particularly since the New Jersey court would be asked to enjoin conduct occurring within California, and may potentially adjudicate the rights of the third party California corporation. Moreover, litigating this case in New Jersey would unnecessarily burden New Jersey jurors with little interest in this dispute. This dispute has virtually no impact in New Jersey. Even incorrectly assuming that Pharma Voxx has received and is using DTW's confidential information, Pharma Voxx transacts only limited business in New Jersey. Furthermore, DTW has not specifically identified any customers that it lost as a result of this alleged misappropriation. Thus, DTW cannot show that it has lost any substantial amount of New Jersey business to Pharma Voxx. In this regard, the outcome of the case will have little impact on New Jersey.

Similarly, the private interests weigh heavily in favor of litigating in California. Since the Defendants are located in California, and the databases allegedly containing the misappropriated data are physically located in California, ease of access to evidence favors California. All the documentation related to the Pharma Voxx database is located in California, and the only way to determine whether information accessed by HealthIQ has been transferred to

the Pharma Voxx data would be to review that database and the supporting documentation. Thus, ease of access to this critical evidence favors litigating in California. The primary allegations underlying these claims involve whether HealthIQ made unauthorized use of DTW's data, and whether that data has been improperly included in the Pharma Voxx database. The witnesses whose testimony is central to those issues are the employees of HealthIQ, Pharma Voxx, and the third party client. All of those witnesses are located in California. HealthIQ maintains that it only accessed the DTW database at the express request of the third party client, and that the data obtained was solely for use in projects requested by and provided to this third party client. In this regard, the testimony of employees of the third party client will be critical to the proper resolution of this case. Given the presence of third party witnesses in California, the cost of witnesses attending trial is minimized by litigating in California. Additionally, it is not clear that unwilling witnesses from the third party client would be subject to compulsory process in New Jersey, a problem that would hinder and lengthen any trial. On the other hand, the only witnesses located in New Jersey would be Plaintiff's officers and directors. Since Plaintiff admits to transacting substantial business in California, it would be subject to personal jurisdiction and compulsory process in California.

Having considered all of the relevant factors, the public and private interests favor dismissal of the Complaint on the basis of *forum non conveniens.*

**IF THE COMPLAINT IS NOT DISMISSED THE COURT SHOULD TRANSFER THE CASE TO THE CENTRAL DISTRICT OF CALIFORNIA**

Pursuant to 28 U.S.C. 1404(a), if the Complaint is not dismissed for lack of jurisdiction or *forum non conveniens*, then it should be transferred to the Central District of California. Section 1404(a) allows "[f]or the convenience of the parties and witnesses, and in the interests of justice, a district court may transfer any civil action to any other district or division where it

might have been brought." The goal of section 1404(a) is to "prevent the waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Tishio v. Bontex, Inc. 16 F. Supp.2d 511, 518 (D.N.J. 1998); see also Van Dusen v. Barrack, 376 U.S. 612, 616 (1964). Like a *forum non conveniens* motion, in evaluating a 1404(a) motion to transfer, the Court must balance private and public interests related to the transfer. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). These interests are generally evaluated through three factors: "(1) the convenience of the parties; (2) the convenience of the witnesses and (3) the interests of justice." Hoffer v. Infospace.com, Inc., 102 F. Supp. 2d 556, 570-72 (D.N.J. 2000).

The convenience of the parties and witnesses overwhelmingly favors transfer. As noted above, all of the Defendants are located in California, maintain no presence in New Jersey, and do very limited or no business in New Jersey. Conversely, Plaintiff, while located in New Jersey, by its own account, does business nationwide, including in California. Moreover, all of the key events occurred in California. The database in which DTW alleges its information has been inappropriately included is in California. Finally, the third party client who authorized HealthIQ to access the CD Promo database is located in California.

Given that the material witnesses, events and evidence are all located in California, conducting a trial in New Jersey would unnecessarily burden Defendants. Moreover, conducting the trial in New Jersey increases the possibility that highly significant third party witnesses will be beyond the subpoena power of the Court. For these reasons the convenience of the parties and witnesses overwhelmingly favors a transfer to the Central District of California.

Similarly, the interests of justice favor transfer. All of the allegedly wrongful conduct occurred in California. Moreover, Plaintiff has directly raised a California state law claim in its Complaint. New Jersey has little interest in the resolution of this dispute.

Thus, in the event the Court does not dismiss the Complaint for lack of personal jurisdiction or *forum non conveniens*, the case should be transferred to the Central District of California.

**CONCLUSION**

For the forgoing reasons, Defendant's motion should be granted, and the Complaint dismissed, or in the alternative, transferred to the Central District of California.

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102-5400
(973) 643-7000
Attorneys for Defendants

By: /S
SCOTT D. STIMPSON
TRENT S. DICKEY
MATTHEW S. O'CONNELL

Dated: February 16, 2010